UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MOHAMMAD CHORAZGHIAZAD,<br><br>　　Plaintiff,<br><br>v.<br><br>STEVE GATLIN et al.,<br><br>　　Defendants. | Case No. 3:22-cv-01048<br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

To:　　The Honorable Waverly D. Crenshaw, Jr., District Judge

## REPORT AND RECOMMENDATION

Pro se Plaintiff Mohammad Chorazghiazad initially brought this action asserting claims against sixteen defendants under 42 U.S.C. § 1983, 18 U.S.C. § 242, and Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e–2000e-17, for violations of his First, Fourth, Fifth, Sixth, Seventh, and Fourteenth Amendment rights. (Doc. No. 1.) Chorazghiazad alleged that the defendants attempted to block his access to the courts, entered his property to serve court documents in violation of his Fourth Amendment rights, and violated various criminal statutes. (Doc. No. 1.) The defendants moved to dismiss Chorazghiazad's claims (Doc. Nos. 33, 36, 40), and the Court dismissed all claims except a single Fourth Amendment claim against former Wilson County Sheriff's Department (WCSD) Lieutenant Steve Gatlin and Corporal Mike Warren (collectively, the Officers) (Doc. Nos. 50, 51.)

The Officers have now moved for summary judgment. (Doc. No. 99.) Chorazghiazad responded in opposition (Doc. No. 104) and the Officers filed a reply (Doc. No. 105.) Chorazghiazad also filed a "Motion of Rule 28 Oral Argument" (Doc. No. 103)

requesting oral argument the summary judgment motion. On September 20, 2024, Chorazghiazad filed a second amended complaint (Doc. No. 106) without consent of the Officers or leave from the Court that the Officers have moved to dismiss. (Doc. Nos. 107, 108.)

Having considered the record as a whole, and for the reasons that follow, the Magistrate Judge will recommend that the Officers' motion for summary judgment be granted and that Chorazghiazad's motion for oral argument and the Officers' motion to dismiss the second amended complaint be terminated as moot.

## I. Background

### A. Factual Background[1]

#### 1. Issuance of *Ex Parte* Order of Protection in Wilson County Chancery Court

Chorazghiazad's Fourth Amendment claim begins with a familial property dispute between Chorazghiazad and Mohammed Naser Chorazghiazad (Naser) in Wilson County, Tennessee, Chancery Court. (Doc. No. 100.) The dispute progressed through multiple hearings before Chancery Court Judge C.K. Smith and, eventually, Naser obtained an *ex parte* order of protection against Chorazghiazad pursuant to Tenn. Code Ann. § 36-3-605. (Doc. No. 101.) As required by that statute, Smith scheduled a hearing for December 20, 2021, to determine whether the order of protection would be dissolved or extended. (Doc. No. 101.) Chorazghiazad did not

---

[1] Chorazghiazad's amended complaint (Doc. No. 5) is unverified and is, therefore, insufficient evidence for the purposes of summary judgment. *See Burley v. Sumner Cty. 18th Judicial Taskforce*, No. 3:19-cv-00118, 2021 WL 852194, *4 (M.D. Tenn. 2021), *report and recommendation adopted by Burley v. Sumner Cnty. 18th Jud. Drug Task Force*, No. 3:19-CV-00118, 2021 WL 848714 (M.D. Tenn. Mar. 5, 2021). The facts in this section are drawn from the Officers' statement of undisputed material facts (Doc. No. 101), to which Chorazghiazad did not respond, and the declarations and other documents filed in support of the Officers' motion for summary judgment (Doc. No. 102). Chorazghiazad's amended complaint (Doc. No. 5) is cited only where necessary to provide context.

appear at the December 20, 2021 hearing, nor did he appear at a second hearing set on January 4, 2022.

On January 14, 2022, Smith entered an order stating that he had received a report that the WCSD had not been able to serve Chorazghiazad with the *ex parte* order of protection and summons "due to a locked gate on [Chorazghiazad's] property which [Chorazghiazad] ha[d] not opened" for the officers attempting service. (Doc. No. 91-1, PageID# 487.) The order continued:

> The record also reflects that [Chorazghiazad] is a judgment debtor in the underlying case. It appears to the Court, and the Court finds, that [Chorazghiazad] has concealed himself so that [Chorazghiazad] cannot be served with process as set forth in the provisions of T.C.A. § 29-6-101(4).[2] Therefore, the Court finds grounds for an attachment exist.

(Doc. No. 91-1.) Smith concluded:

> **IT IS THEREFORE ORDERED, ADJUDGED AND DECREED**, as follows:
>
> The Clerk and Master will re-issue the show cause order and *ex parte* order of protection and set the matter for a date and time certain for the appearance of [Chorazghiazad] and a hearing. [WCSD] is authorized to enter on the property of [Chorazghiazad] at 132 Southside Park, Lebanon, Tennessee 37090 for the purpose of serving the *ex parte* order of protection and the show cause order and any other process in this case. If entry on the property is denied, the Sheriff is authorized to remove such locks or barriers as may be in place to allow the Sheriff or his deputies on to the above property for the purpose of serving process in accordance with the Tennessee Rules of Civil Procedure. The Clerk and Master is authorized to issue an attachment to place in effect the orders of this Court. The *ex parte* order of protection will remain in effect pending service on [Chorazghiazad]. For all of the above, execution may issue if necessary.

*Id*.

---

[2] This statute provides: "Any person having a debt or demand due at the commencement of an action, or a plaintiff after action for any cause has been brought, and either before or after judgment, may sue out an attachment at law or in equity, against the property of a debtor or defendant in the following cases: . . . (4) Where the debtors or defendants concealed is [sic] so that the ordinary process of law cannot be served upon the debtor or defendant[.]" Tenn. Code Ann. § 29-6-101(4).

### 2. February 9, 2022 Service of Orders and Summons

The WCSD dispatched the Officers to Chorazghiazad's home on February 9, 2022, to serve the *ex parte* order of protection, show-cause order, and summons. (Doc. No. 100.) (Doc. No. 101, PageID# 552, ¶ 8.) The parties disagree about what happened when the Officers arrived at Chorazghiazad's property.

It is undisputed that Chorazghiazad's property "was completely fenced in by a fence constructed with wooden support beams and sided with sheet metal roofing . . . ." (Doc. No. 101 ¶ 8.) The Officers state in their respective declarations that "[they] believed [Chorazghiazad] to be present at the property" and that "[they] had previously been to [ ] Chorazghiazad's property to serve him and attempted to get him to come to the gate[,] but he had never responded[.]" (Doc. No. 102-2, PageID# 563, ¶ 9; Doc. No. 102-3, PageID# 567, ¶ 9.) On this visit, Gaitlin "noticed that the bottom quadrant of the metal siding on an area of the metal fence was disconnected from the wooden support beam, creating a gap that was approximately 12-16 inches wide." (Doc. No. 102-2 ¶ 10.) He states that the "gap in the fence was there when [the Officers] arrived to the property" and that they "did not create the gap in the fence or pull and/or disconnect the metal siding apart from the wooden support beams." (*Id*. at ¶ 11.)

The Officers believed that "they could reasonably rely on the court order that expressly gave them permission to remove locks and barriers" to enter Chorazghiazad's property and therefore "believed that same order permitted them to enter the property through the already-existing gap in the metal fence to serve process." (Doc. No. 100, PageID# 537.) The Officers state that they entered the property through the gap in the fence without damaging the fence or creating a larger gap. (Doc. Nos. 101, 102-2, 102-3.) Chorazghiazad disagrees and states that the Officers "broke [an] [eight-foot] [t]all fence to enter [his] private property to serve the summon[s]" without his consent. (Doc. No. 104, PageID# 572, 576.)

Once on the property, the Officers "knocked on the door to the building on [Chorazghiazad's] property," but no one answered.³ (Doc. Nos. 101, 102-2, 102-3.) They then "examined a tractor trailer and RV on the property but saw no sign of [Chorazghiazad]." (Doc. No. 101, PageID# 553, ¶ 15.) Warren "believed he saw a camera flash from a window in the building" where the officers originally knocked. (Doc. No. 102-3, PageID# 568, ¶ 19.) Gatlin went back to the building, looked in a window, and saw Chorazghiazad seated in a chair. (*Id.*)

Gatlin states that he knocked on the window, Chorazghiazad came out of the building, and Gatlin "served him with process." (Doc. Nos. 101, 102-3.) The Officers state that, after effecting service, they "exited [Chorazghiazad's] property through the same gap in the metal fence" they had used to enter. (Doc. No. 101, PageID# 553, ¶ 20.) Chorazghiazad agrees that the Officers left through the same hole in the fence through which they entered but alleges that the Officers "broke" the fence doing so. (Doc. Nos. 35, 104.)

B.  **Procedural History**

Chorazghiazad initiated this action by filing a complaint against sixteen defendants alleging various violations of his rights under the Constitution and federal law. (Doc. No. 1.) Chorazghiazad filed an amended complaint before the defendants appeared that is the operative pleading. (Doc. No. 5.) All defendants moved to dismiss the amended complaint. (Doc. Nos. 33, 36, 40.) Chorazghiazad opposed the motions. (Doc. Nos. 35, 46.) On June 5, 2023, the Court dismissed all claims against all defendants except Chorazghiazad's Fourth Amendment claim against the Officers in their individual capacities.⁴ (Doc. No. 50.)

---

³ The Officers repeatedly make reference to but do not otherwise identify a "building" on Chorazghiazad's property. The Court assumes that the building is Chorazghiazad's residence.

⁴ Chorazghiazad appealed the Court's order accepting and adopting the report and recommendation to dismiss most of his claims. (Doc. No. 52.) The Sixth Circuit Court of Appeals

On February 9, 2024, Gatlin and Warren filed a motion for summary judgment under Federal Rule of Civil Procedure 56 (Doc. No. 91) and a supporting memorandum of law. (Doc. No. 92.) The Court directed the Clerk's Office to administratively terminate that motion without prejudice to refiling because Gatlin and Warren failed to file a statement of undisputed material facts as this Court's Local Rule 56.01 requires. (Doc. No. 98.) The Officers filed a copy of Smith's January 14, 2022 order as "Exhibit 1" to their initial summary judgment motion. (Doc. No. 91-1.)

On May 13, 2024, Gatlin and Warren filed a renewed motion for summary judgment (Doc. No. 99) supported by a memorandum of law (Doc. No. 100), a statement of undisputed material facts (Doc. No. 101), and Gatlin's and Warren's respective declarations. (Doc. Nos. 102-2, 102-3.) Attached to their memorandum of law as "Exhibit 1" was an order Smith issued in an earlier proceeding unrelated to the Officers' motion. (Doc. No. 102-1.) Because the January 14, 2022 order is the relevant order for purposes of the Officers' summary judgment motion, the Court will consider the Officers' references to "Exhibit 1" to address their original attachment (Doc. No. 91-1.). Chorazghiazad filed a response in opposition to the motion for summary judgment and attached four photographs as exhibits to the motion. (Doc. No. 104.) The Officers filed a reply. (Doc. No. 105)

## II.     Legal Standard

### A.  Summary Judgment

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may

---

found that it lacked jurisdiction over the interlocutory order and dismissed the appeal. (Doc. Nos. 62, 63.)

reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))).

The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B).

Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502,

511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

III.     Analysis

      A. **Local Rule 56.01 and the Officers' Initial Burden Under Federal Rule of Civil Procedure 56**

This Court's Local Rule 56.01 provides that "any motion for summary judgment . . . must be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). Under this rule, "[e]ach fact must be set forth in a separate, numbered paragraph [and] . . . must be supported by specific citation to the record." *Id.* Any party opposing a motion for summary judgment must specifically respond to each asserted fact by: "(1) [a]greeing that the fact is undisputed; (2) [a]greeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) [d]emonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record." M.D. Tenn. R. 56.01(c) (response to statement of facts) "The response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant" and "must be filed with the papers in opposition to the motion for summary judgment." *Id.* Pro se parties are not excused from complying with this rule. *See* M.D. Tenn. R. 56.01(b)—(c)

"If a timely response to a moving party's statement of material facts, or a non-moving party's statement of additional facts, is not filed within the time periods provided by these rules, the asserted facts shall be deemed undisputed for purposes of summary judgment." M.D. Tenn.

8

Case 3:22-cv-01048   Document 109   Filed 02/24/25   Page 8 of 16 PageID #: 627

R. 56.01(f) (failure to respond). However, a plaintiff's failure to specifically respond to a defendant's statement of undisputed material facts does not lessen the defendant's initial burden to show an absence of any genuine dispute of material fact under Federal Rule of Civil Procedure 56. *See Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991) ("[A] party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact . . . regardless if an adverse party fails to respond."); *Felix v. Young*, 536 F.2d 1126, 1135 (6th Cir. 1976) ("[T]he fact that the movant's affidavits are uncontroverted does not necessarily mean that summary judgment should be granted[;] the ultimate burden of proving the propriety of summary judgment remains on the moving party.").

"Rule 56 first imposes a burden of production on the moving party to make a prima facie showing that it is entitled to summary judgment." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. updated Apr. 2020). "In this context, a 'prima facie' showing means that, in the absence of evidence to the contrary, the movant's evidence is sufficient to entitle the movant to summary judgment." 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.40 (3d ed. 2020). Courts must view the movant's evidence in the light most favorable to the nonmovant. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) ("[T]he moving party . . . ha[s] the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party."); *see also Evans v. Plummer*, 687 F. App'x 434, 446 (6th Cir. 2017) (viewing defendant's summary judgment evidence in light most favorable to plaintiff, finding it insufficient, and affirming, in part, district court's denial of summary judgment).

If the moving party's evidence is insufficient, "'[n]o defense . . . is required'" and summary judgment must be denied. *Adickes*, 398 U.S. at 161 (quoting 6 James Wm. Moore et al.,

9

*Moore's Federal Practice* § 56.22(2) (2d ed. 1966)); *see also Evans*, 687 F. App'x at 446 (affirming, in part, denial of summary judgment where cited video evidence was insufficient to satisfy defendant's initial burden and plaintiff's opposition did not address that evidence); 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. updated Apr. 2020) ("If the movant fails to make that initial showing, the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response.").

Chorazghiazad did not file a response to the Officers' statement of undisputed facts. As a result, the Officers' statement of undisputed facts is considered undisputed for purposes of resolving their motion. Nevertheless, the Officers still have the burden as the moving party to sufficiently show the absence of genuine issues of material fact. The Court construes the record evidence in the light most favorable to Chorazghiazad because he is the non-moving party,.

The Court must therefore examine the Officers' legal arguments and supporting evidence to determine if they have satisfied their initial burden. *See Adickes*, 398 U.S. at 160 ("'[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.'" (quoting Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment)); *Evans*, 687 F. App'x at 446; *see also Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (holding that defendant "did not carry its initial burden of production" where evidence it produced in support of motion for summary judgment "purport[ed] to negate an essential element of plaintiffs' claim—timely notice—but . . . d[id] not actually do so"). Under Rule 56(c)(3), the Court may also look to other materials in the record to determine if the defendants have carried their initial burden. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); Fed. R. Civ. P. 56(c) advisory committee's

note to 2010 amendment ("[A] court may consider record materials not called to its attention by the parties.").

B. **Gatlin and Warren's Motion for Summary Judgment**

The Officers' motion for summary judgment addresses the only remaining claim in this action: that the Officers violated Chorazghiazad's Fourth Amendment rights when they "broke [an] [eight]-foot fence" "to enter [his] private property to serve [him] [with] the summon[s]" and "search[ed his] property without a warrant or probable cause." (Doc. No. 5, PageID# 33, 34.) Gatlin and Warren assert that they are entitled to qualified immunity or, in the alternative, that they did not violate Chorazghiazad's Fourth Amendment rights because they acted under the authority of a valid court order that was the legal equivalent of a search warrant. (Doc. No. 100, PageID# 538, 542.)

1. **Chorazghiazad's Fourth Amendment Claim**

To prevail on a § 1983 claim, a plaintiff must show "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Shadrick v. Hopkins Cnty., Ky.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010)). The Fourth Amendment provides for "people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . and [that] no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched . . . ." U.S. Const. amend. IV. A search occurs when "[t]he Government physically occupie[s] private property for the purpose of obtaining information." *United States v. Jones*, 565 U.S. 400, 404 (2012). "Because the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion stands at the very core of the Fourth Amendment," the Supreme Court has "firmly established the basic principle of Fourth Amendment law that searches and seizures inside a home without a

warrant are presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 556 (2004) (internal citations omitted). It is equally well-established that the "curtilage" of a house—the area "immediately surrounding and associated with the home"—is treated as "part of [the] home itself for Fourth Amendment purposes." *Oliver v. United States*, 466 U.S. 170, 180 (1984); *Morgan v. Fairfield Cnty., Ohio*, 903 F.3d 553, 561 (6th Cir. 2018).

Chorazghiazad alleges generally that the Officers violated his rights under the Fourth Amendment by entering his property without a warrant after breaking his privacy fence to do so.

### 2. Qualified Immunity

A government official is entitled to qualified immunity "on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Where a defendant invokes qualified immunity and carries its initial summary judgment burden, "the plaintiff bears the burden to show that qualified immunity is inappropriate." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013). Courts may address the two elements in any order. *Morgan*, 903 F.3d at 560 (citing *Pearson*, 555 U.S. at 236–37).

The Officers argue that they are entitled to qualified immunity (1) because it is not clearly established that "a reasonable police officer would understand that he was violating the Fourth Amendment when he enters someone's yard armed with a court order expressly authorizing such entry" and (2) because Smith's January 10, 2022 order was the functional equivalent of a warrant and thus authorized any activity that might be considered a search under the Fourth Amendment.

(Doc. No. 100.) Because the "clearly established" factor controls the qualified immunity analysis here, the Court makes no finding as to whether the Officers' entry into Chorazghiazad's property through a modest gap in the fencing for the purpose of serving civil process constitutes a search under the Fourth Amendment or, if so, whether Smith's order can be found to meet the requirements of the Fourth Amendment's Warrant Clause.[5] The question of qualified immunity in this case is resolved by what the Officers reasonably understood Smith's order to authorize.

The "clearly established" prong of the qualified immunity inquiry asks whether a "reasonable official would have understood that what he is doing violates [a constitutional] right." *Mullenix*, 577 U.S. at 11. Here, the Officers had in hand an order that authorized the Sheriff to "enter on [Chorazghiazad's] property . . . for the purpose of serving" the *ex parte* order of protection and other process and, if entry was denied, "to remove such locks or barriers as may be in place to allow the Sheriff or his deputies on to the above property for the purpose of serving process . . . ." (Doc. No. 91-1.) The order "actually approved [the Officers'] actions" in

---

[5]  The Officers do not address authority supporting the proposition that "[t]here is no violation of the Fourth Amendment when an officer comes upon private property to serve legal process, so long as there is no breaking or entering of a dwelling or other building of a type protected by the Amendment. There is no search or seizure in such a case." *United States v. Olander*, 584 F.2d 876, 888 (9th Cir. 1978) (vacated on other grounds by *Minnich v. United States*, 443 U.S. 914 (1979); *see also McCarthy v. Kootenai Cnty.*, No. CV08-294-N-EJL, 2009 WL 3823106, at *5 (D. Idaho Nov. 12, 2009) ("Serving process in a peaceful manner is not a search or seizure."). *But see State v. Harris*, 919 S.W.2d 619, 623 (Tenn. Crim. App. 1995) (holding that "[t]he obligation to serve civil process unquestionably gave the officers the right to approach [a] dwelling and knock on the door" but that, "once an officer has walked around the exterior of a dwelling or attempted to gaze inside a window, the officer violates the mandate of the Fourth Amendment . . . .").

manipulating Chorazghiazad's fence to enter his property, "thereby implicitly giving the impression that their actions were allowed by law." *Sims v. Montgomery Cnty. Comm'n*, 873 F. Supp. 585, 610–11 (M.D. Ala. 1994). Thus, with the broad permissions Smith granted in hand, a reasonable officer would not understand that entering onto Chorazghiazad's property violated the Fourth Amendment, even if he had to manipulate barriers in place to do so.[6] *See Barrera v. City of Mount Pleasant*, 12 F.4th 617, 621 (6th Cir. 2021) (holding that qualified immunity inquiry "asks only whether, at the time of the officer's conduct, the law was 'sufficiently clear that every reasonable official would [understand] that what he is doing' violates the law—so clear that the invalidity of the officer's actions was 'beyond debate'") (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The Officers' belief that Smith's order authorized their conduct was reasonable under controlling case law. The Sixth Circuit holds "that an official is entitled to absolute quasi-judicial immunity when that official acts pursuant to a valid court order because the act of 'enforcing or executing a court order is intrinsically associated with a judicial proceeding.'" *Cooper v. Parrish*, 203 F.3d 937, 948 (6th Cir. 2000) (quoting *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994)); *see also Jones v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:21-CV-00112, 2022 WL 1625162, at *4 (M.D. Tenn. May 23, 2022). Unlike the qualified immunity afforded an official's discretionary functions, this quasi-judicial immunity stems from "the official's *lack* of discretion" in executing a court's orders. *J.P. Silverton Indus. L.P. v. Sohm*, 243 F. App'x 82, 89 (6th Cir. 2007). And courts also have repeatedly found that law enforcement officers who act pursuant to a

---

[6] Chorazghiazad makes no argument and offers no evidence from which to find that the Officers knew or suspected that the order was based on fraudulent testimony or any other reason that would call the reasonableness of the Officers' reliance on the order's authority into doubt. *See, e.g.*, *Marvaso v. Sanchez*, 971 F.3d 599, 610 (6th Cir. 2020) (noting "important exception" that an officer cannot rely on a warrant knowingly obtained through the officer's own false testimony).

court order are entitled to qualified immunity for acts authorized by the order. *See, e.g.*, *Walker v. Mirbourne NPN 2 LLC*, No. 22 CIV. 2382 (RPK) (VMS), 2023 WL 11867001, at *9 (E.D.N.Y. Feb. 27, 2023) (collecting cases finding officers entitled to qualified immunity for attempts to remove individuals from property pursuant to court orders); *Nicholson v. Moates*, 159 F. Supp. 2d 1336, 1350 (M.D. Ala. 2001) (granting summary judgment on qualified immunity grounds where sheriff executed seizure of property "with an order signed by a judge of competent jurisdiction").

The Officers have carried their burden at summary judgment to show it was not clearly established that a reasonable officer would understand entry onto Chorazghiazad's property under the authority of Smith's order violated the Fourth Amendment. Chorazghiazad has not offered any argument or evidence otherwise. Accordingly, the Officers are entitled to qualified immunity from Chorazghiazad's Fourth Amendment claim against them.

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that the Officers' motion for summary judgment (Doc. No. 99) be GRANTED and this action be dismissed. The Magistrate Judge further RECOMMENDS that Chorazghiazad's motion for oral argument on the summary judgment motion (Doc. No. 103) and the Officers' motion to dismiss Chorazghiazad's second amended complaint (Doc. No. 107) be TERMINATED as moot.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 24th day of February, 2025.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge